Robert ZIMMERMAN, Appellant,

v.

SAFECO INSURANCE COMPANY OF AMERICA, Respondent.

No. C9–98–1991.

Supreme Court of Minnesota.

Feb. 17, 2000.

Andrew Engebretson, St. Paul, for appellant.

Paul A. Benker, Paula Duggan Vraa, Lindsay G. Arthur, Jr., Minneapolis, for respondent.

## OPINION

STRINGER, Justice.

Appellant Robert Zimmerman, president and sole shareholder of Airport & Airline Taxi–Cab Corporation (Airport Taxi), was sued by an employee for sexual harass-ment as well as other claims in October of 1995. Zimmerman tendered the defense to Safeco Insurance Company of America (Safeco) under his homeowner's insurance policy. Safeco declined to accept the tender, claiming that liability for sexual harassment was not covered under the policy because it was a loss that fell within the business pursuits exclusion to coverage. Zimmerman was found liable on the sexual harassment claim and then sought a declaratory judgment that Safeco has an obligation under the policy to defend and indemnify him in the lawsuit.[1] Safeco moved for summary judgment claiming that liability for sexual harassment in the workplace falls under the business pursuits exclusion of the policy. The district court granted summary judgment for Safeco, Zimmerman appealed and the court of appeals affirmed.[2] We affirm.

In 1991, Zimmerman and a female employee of Airport Taxi became involved in a sexual relationship but in late 1994 the affair began to tarnish. The employee began avoiding Zimmerman and no longer wanted a relationship with him because he had been making embarrassing and distressing comments to her in front of her co-workers. The relationship then ended but Zimmerman attempted to rekindle it a short time later. Unsuccessful, Zimmerman found it difficult to see the employee on a daily basis because he still had romantic feelings for her and asked her to "explore her options," although he admitted he was satisfied with her work. The employee begged Zimmerman for her job, prompting an outburst from Zimmerman that included sexual innuendoes. On July 19, 1995, the employee resigned her employment and sued alleging a variety of claims including sexual harassment in the

1. On appeal here Zimmerman has not raised the question of whether Safeco had a duty to defend and therefore we decline review on this issue.

2. Zimmerman also tendered the defense to several other insurers. All of those insurers were granted summary judgment based on their standard "business pursuits" and "intentional acts" exclusions. Zimmerman did not appeal.

workplace. The district court found that Zimmerman's conduct constituted sexual harassment and caused the employee emotional distress and permanent emotional damage. Further, the court found that Zimmerman implicitly fired the employee by creating a hostile work environment causing her to leave her job at Airport Taxi. In this declaratory judgment action, the district court granted Safeco summary judgment concluding that because the business relationship between Zimmerman and his employee was inseparable from the sexual harassment claim, the business pursuits exclusion in the homeowner's insurance policy applied relieving Safeco of a duty to defend or indemnify Zimmerman.

On appeal, the court of appeals held that the sexual harassment claim could not have existed but for the business relationship between Zimmerman and the employee and affirmed the district court's holding that Safeco's homeowner's policy does not provide coverage for injuries related to the claim because of the business pursuits exclusion. *See Zimmerman v. Safeco Ins. Co. of Am.,* 593 N.W.2d 248 (Minn.App. 1999).

In appellate review of an order for summary judgment we must determine whether there is any issue of material fact and whether the lower court erred in applying the law. *See Norwest Bank Minn., N.A. v. State Farm Mut. Auto. Ins. Co.,* 588 N.W.2d 743, 745 (Minn.1999). Where material facts are not in dispute and the sole issue is a question of insurance policy interpretation, our review is de novo. *See id; see also State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992) (stating that insurance coverage issues are questions of law).

The relevant provisions of the homeowner's policy issued by Safeco to Zimmerman are as follows:

### SECTION II–LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

pay up to our limit of liability for the damages for which the **insured** is legally liable; and

provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may make any investigation and settle any claim or suit that we decide is appropriate.

### SECTION II–EXCLUSIONS

**Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

\* \* \* \*

arising out of **business** pursuits of any **insured** \* \* \*.

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-**business** pursuits; \* \* \*.

We must determine if Zimmerman's sexual harassment arose out of his business pursuits and therefore falls within the policy's business exclusion and if it does, if it was an activity ordinarily incident to nonbusiness pursuits falling within the exception to the exclusion.

In *Milwaukee Mutual Insurance Co. v. City of Minneapolis,* we held that whether conduct constitutes a business pursuit depends on the relationship between the conduct in question and the business of the insured. 307 Minn. 301, 309, 239 N.W.2d 472, 476 (1976). There, a Minneapolis police officer who was demonstrating the operation of his service revolver to other

officers in the police station accidentally shot another officer. *See* 307 Minn. at 305–06, 239 N.W.2d at 474. The officer who accidentally discharged the gun tendered the wounded policeman's claim for injuries to the officer's homeowner's insurance carrier. *See id.* We affirmed the district court's determination of coverage, concluding under policy language identical to Safeco's that the officer's conduct was a business pursuit for purposes of the insurance policy because the conduct was peculiar to and contributed to the interests of police activities. *See* 307 Minn. at 307, 239 N.W.2d at 475. We held that the exception to the business pursuits exclusion applied however, because "activities such as pistol handling and trigger spring checking * * * are ordinarily incident" to nonbusiness activities such as "hunting, weapon collecting and target shooting." *See id.* The officer was thus entitled to indemnification from liability for the accident under his homeowner's insurance policy.

We also held that the exclusion and its exception applied in *Farmers Insurance Exchange v. Sipple,* where the insured, a state highway department employee, assaulted a farmer during a heated debate over a new highway that was allegedly creating drainage problems for the farmer's land. 255 N.W.2d 373, 374 (Minn. 1977). Under language identical to that in Zimmerman's Safeco policy, we held that while the assault fell within the exclusion because it was peculiar to and contributed to the interests of business activity, it also fell within the nonbusiness exception to the exclusion because the assault was an act ordinarily incident to nonbusiness pursuits. *See id.* at 375.

Finally, in *Bankers Standard Insurance Co. v. Olwell,* we determined that the in-

sureds, licensed daycare providers, were entitled to coverage under their homeowner's insurance policy for claims asserted when two children, who were under their care, wandered into a street and were injured. 309 N.W.2d 799, 801–02 (Minn.1981). We again held that the incident fell under the business pursuits exclusion but concluded the exception to the exclusion applied because caring for and supervising children were "clearly incident to [the] nonbusiness regimen of maintaining a household and supervising * * * children." *Id.* (quoting *Crane v. State Farm Fire & Cas. Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129, 1131 (1971)).[3]

■ Here, Zimmerman asserts that Safeco has a duty to indemnify him because sexual pursuits in the workplace are not conduct peculiar to or in the furtherance of the interests of his business. *See Milwaukee Mut. Ins. Co.,* 307 Minn. at 309, 239 N.W.2d at 476. Zimmerman argues that the conduct at issue is the sexual pursuit of another person, a private and personal matter not solely referable to the conduct of the business because it is not an activity regularly engaged in for purposes of earning a livelihood such as a trade, profession, or occupation. Zimmerman further contends that even if we determine that the business pursuits exclusion applies, the exception to the exclusion also applies because, regardless of the legal label attached to sexual harassment, the sexual pursuit of another person is an activity ordinarily incident to nonbusiness pursuits. Finally, Zimmerman argues that Safeco could have amended its policy language, as many other insurers have done, to specifically prohibit coverage for sexual harassment; Safeco chose not to and therefore has a duty to indemnify Zimmerman for his losses.

---

**3.** In *Crane,* the insured regularly cared for two children, in addition to her own, in return for payments of cash and groceries. The California Supreme Court found that even if the insured was occupied in a business pursuit, her activities were incident to non-business pursuits and therefore the exclusion did not apply. *See Crane,* 95 Cal.Rptr. 513, 485 P.2d at 1131.

Safeco, on the other hand, argues that the liability-creating event—Zimmerman's sexual harassment of an employee—must be the focus for determining whether the policy's business exclusion and exception apply, and that sexual harassment must fall under the business pursuits exclusion because, by definition, it arose from and was dependent upon the business relationship. Further, Safeco argues that the exception to the exclusion does not apply because the liability-creating conduct could not have occurred outside the employment relationship. Therefore it was not an activity ordinarily incident to nonbusiness pursuits.[4]

We believe that Safeco has the better arguments and that the appropriate focus must be on the liability-creating conduct—Zimmerman's sexual harassment of an employee.

Here the liability-creating conduct is Zimmerman's sexual harassment of an employee. Clearly, sexual harassment of an employee falls within the general business pursuits exclusion of the policy because by definition it occurs in the workplace, and we so hold. In reaching this conclusion we are not, as the dissent contends, condoning or "legitimizing" sexual harassment in the workplace. Our holding, in simplest terms, is that because the sexual harassment for which Zimmerman was found liable can only happen in the workplace—for example, the creation of a hostile work environment—by definition it falls within the "business pursuits" exclusion. We of course do not dispute the toll that workplace sexual harassment takes on everyone in the workplace in terms of morale and productivity, to say nothing of human dignity and respect, but that is not the issue here.[5]

The more difficult question however, is whether the exception to the exclusion applies because the conduct is ordinarily nonbusiness-related activity. We acknowledge our earlier reasoning in *Milwaukee Mutual, Farmers Insurance Exchange,* and *Bankers Standard* where we held that the exception to the exclusion applied because the activity was normally related to a nonbusiness pursuit. But even if we were to apply such reasoning— a proposition we find dubious because there would be few instances where a search for an ordinarily nonbusiness pursuit, no matter how strained, would not lead to enforcing the exception—we conclude that the exception cannot apply where, by definition, the liability-creating conduct is based upon the employment relationship in the business setting. Our analysis is further supported by the district court's finding that Zimmerman's sexual harassment created a hostile workplace that led to the employee's constructive discharge, again, an occurrence that could not take place outside the business environment.

Other states have adopted a similar analysis. In *Greenman v. Michigan Mutual Insurance Co.,* the Michigan Court of Appeals held that the insurer did not have a duty to defend when the insured was sued by a co-worker for sexual harassment in the workplace. 173 Mich.App. 88, 433 N.W.2d 346, 350 (1988). The court held that the co-worker's alleged injuries arose from the insured's business pursuits and were thus excluded from coverage under the homeowner's policy because the "complained of acts could not, by definition, exist outside of the employer-employee relationship." *Id.* at 349–50. The Michigan court defined a business pursuit as an

---

4. Although the trial court in the sexual harassment lawsuit determined that Zimmerman's conduct was intentional and the Safeco policy contained an exclusion for intentional conduct, Safeco failed to raise the issue before this court.

5. The perversity of the dissent's reasoning is that it would result in insurance coverage for the liability imposed on Zimmerman for his sexual harassment—hardly a just reward for his abhorrent conduct.

"activity engaged in continuously and for profit," but then went on to say that the complained of acts need not be performed for profit if they occurred *during* the business pursuits. *Id.* at 349 (citing *Frankenmuth Mut. Ins. Co. v. Kompus,* 135 Mich. App. 667, 354 N.W.2d 303 (1984), and *State Mut. Cyclone Ins. Co. v. Abbott,* 52 Mich. App. 103, 216 N.W.2d 606 (1974)).

Similarly in *Armed Forces Insurance Exchange v. Transamerica Insurance Co.,* the Hawaii Intermediate Court of Appeals held that conduct fell within the business pursuits exclusion to the insured's homeowner's policy and the exception for ordinarily nonbusiness pursuits did not apply where the insured, a housing inspector, allegedly committed acts of sexual assault and harassment after gaining admittance to victims' homes. 88 Hawai'i 373, 966 P.2d 1099, 1100 (Haw.Ct.App.1998), *cert. denied* (Haw. October 26, 1998). The court held that the insured's business pursuit was home inspections, that the harassment occurred during the business pursuit, and therefore the business pursuits exclusion applied and the exception did not. *See id.* at 1107–08.

We hold that the employee's sexual harassment claims against Zimmerman are within Safeco's homeowner's policy's business exclusion provision and do not fall within the exception to the exclusion as ordinarily incident to nonbusiness pursuits.

Affirmed.

GILBERT, J., took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I simply cannot join in any opinion of this court that states, as this one does, that workplace sexual harassment constitutes a business pursuit. Under our Human Rights Act, sexual harassment in employment, public accommodations or public services, education and housing is illegal. *See* Minn.Stat. § 363.03 (1998). It has been illegal in the employment setting since this court's 1980 decision in *Continental Can Co. v. State ex rel. Wilson,* 297 N.W.2d 241, 249 (1980). Over the years, a great number of people have fought hard to eradicate sexual harassment from the workplace and every other place where it is found. For this court to now give sexual harassment legitimacy by labeling it a business pursuit, I cannot abide.[1]

Moreover, we have said that a business pursuit must contribute to or further the interest of the business. *See Milwaukee Mut. Ins. Co. v. City of Minneapolis,* 307 Minn. 301, 309, 239 N.W.2d 472, 476 (1976). Putting aside its toll on the human spirit, it has been estimated that between 1978 and 1980, the effects of sexual harassment cost the federal government $189 million and for the years 1985 to 1987, $267 million. *See* Barry S. Roberts & Richard A. Mann, *Sexual Harassment in the Workplace: A Primer,* 29 Akron L.Rev. 269, 271 (Winter 1996). It is estimated that for the typical Fortune 500 company, the cost of sexual harassment is $6.7 million annually. *See id.* Clearly, workplace sexual harassment does not contribute to or further the interest of any business. Therefore, I dissent.[2]

---

1. The court suggests that concluding that sexual harassment does not constitute a business pursuit would lead to a perverse result. The only reasons the result would be perverse in this case are because Safeco drafted its policy using language which did not explicitly exclude sexual harassment from coverage and because, unlike the other insurance companies involved in this case, Safeco elected not to assert its policy's intentional acts exclusion in denying Zimmerman's claim.

2. I also raise my voice in dissent to the extent that the court's opinion suggests that an insurer has no duty to defend an insured who is accused of having engaged in sexual harassment. *See Brown v. State Auto. & Cas. Underwriters,* 293 N.W.2d 822, 825–26 (Minn.1980). *See generally Haarstad v. Graff,* 517 N.W.2d 582, 585 (Minn.1994).